UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ROSA M. HOLDER,

                Plaintiff,

      -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                Defendant.
----------------------------------------------------X

**MEMORANDUM & ORDER**

**09 CV 3171**

DEARIE, Chief Judge.

      Plaintiff Rosa M. Holder brings this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security that she is not disabled and, therefore, not entitled to either Disability Insurance Benefits under Title II or Supplemental Security Income under Title XVI of the Social Security Act. Both parties move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. For the reasons set forth below, the motions are denied, and the matter is remanded for further proceedings.

### Background

      Plaintiff was born in 1962. Although she did not graduate from high school, she earned a General Equivalency Diploma in 1979. Plaintiff speaks, reads and writes English. From 1984 to 2006, she worked in institutional food service, primarily as a cook. For approximately three years beginning around the year 2000, plaintiff worked as a cashier. She contends that she ultimately became unable to work in 2006 as a result of back problems that began with an injury she sustained on the job pulling a rack out of an oven in February of 2003. Plaintiff lives with her mother, brother and eighteen-year-old daughter.

      On July 11, 2007, petitioner filed applications for social security benefits alleging a disability onset date of September 7, 2006. Her applications were denied on September 19,

2007, and on November 7, 2007, she requested a hearing before an Administrative Law Judge. Plaintiff appeared without representation at the hearing before ALJ Manuel Cofresi on May 8, 2008. When ALJ Cofresi reviewed her right to representation, she told him that she "didn't know [she] was supposed to have a lawyer." (Tr. 17.) After he explained that she was not required to have a lawyer, but that she had a right to have one, she declined to postpone the hearing to seek representation. The hearing consisted of a brief examination of plaintiff by ALJ Cofresi, amounting to less than seven transcript pages.

By decision dated January 20, 2009, plaintiff's applications were denied. The Appeals Council denied her request for review and affirmed the decision on May 14, 2009. She remains insured through December 31, 2011.

**Discussion**

I. Evidence of Disability

    A. Medical Records - Treating Physicians

Dr. Robert Hecht, a physiatrist at Island Musculoskeletal Care, first evaluated plaintiff on June 22, 2007, for "a second opinion regarding treatment." (Tr. 105.) She reported that she had stopped working in September 2006 because of "ongoing pain and limited range of motion in her back." (Id.) In addition, plaintiff complained of pain radiating down both her legs and numbness. After her initial injury on February 1, 2003, she missed one month of work and received physical therapy for over a year.

According to Dr. Hecht's report, an MRI, dated March 10, 2003, "revealed posterior disc herniations at L3-L4 and L4-L5 impinging on the anterior aspect of the spinal canal right nerve root at L3-L4 neural foramen bilaterally at L4-L5." (Id.) He did not have a copy of the

2

subsequent MRI that plaintiff told him had been performed. (Id.) Dr. Hecht found tenderness in her lumbar spine, a restricted range of motion, and a positive straight leg raise test bilaterally, but no spasm. (Id.) Plaintiff had a full active range of motion and strength in her hips, knees and ankles, and intact sensation. (Tr. 106.) An X-ray of plaintiff's lumbar spine revealed mild degenerative changes. (Id.)

Dr. Hecht recommended EMG testing of the lower extremities to rule out lumbar radiculopathy. (Id.) His impression was that plaintiff had a lumbosacral sprain-strain and lumbar disc herniations. He concluded that she "remains disabled from work," and "ultimately . . . expect[ed] [her] to have a permanent disability." (Id.) He scheduled a follow-up exam four weeks later.

Two weeks later, on July 6, 2007, plaintiff returned to Dr. Hecht with continuing back pain radiating down her legs and numbness. (Tr. 136.) She again exhibited tenderness in the lumbar spine and a restricted range of motion, but a negative straight leg raise test bilaterally. (Id.) The report refers to an attached range of motion and manual muscle testing report, but that report is not part of the record. (Id.) One week later, on July 13, 2007, Dr. Hecht performed a nerve conduction study of the lower extremities. (Tr. 137.) The results were unremarkable. (Id.) Her straight leg raise test, however, was positive. Dr. Hecht prescribed continued physical therapy and scheduled a follow-up visit in one week for needle EMG testing of the lower extremities. (Tr. 137.) The record includes a routing sheet dated July 20, 2007, indicating a needle EMG of the lower extremities, but the results are absent from the record. (Tr. 115.)

On August 17, 2007, plaintiff's straight leg raise test was again positive bilaterally. (Id.) The report refers to an attached range of motion and manual muscle testing report that is included out of sequence in the record. (Tr. 112) Although the handwritten notations are

3

difficult to read, it appears to indicate that plaintiff had 70 degrees flexion (full range 0-90), 15 degrees extension (full range 0-30), 15 degrees lateral flexion (full range 0-20), and 20 degrees rotation (full range 0-30). (Id.) Dr. Hecht noted that plaintiff remained disabled and should continue physical therapy. (Tr. 138.) He also recommended a trial course of Arthrotec 75mg twice a day. (Id.)

Upon examination by Dr. Hecht on September 21, 2007, October 26, 2007, November 30, 2007, January 4, 2008, February 1, 2008 and February 29, 2008, plaintiff's condition remained largely unchanged, except that her straight leg raise test was negative bilaterally. (Tr. 139-44.) Each of the reports refers to an attached range of motion and manual muscle testing report which is missing. (Id.) Dr. Hecht consistently notes that plaintiff remains disabled and should continue physical therapy. (Id.) In addition to Arthrotec, on October 26, 2007, he prescribed Flexeril 10 mg three times a day, (Tr. 140), and on January 4, 2008, he substituted Skelaxin 800 mg every 6 hours for the Flexeril because the Flexeril was not effective. (Tr. 143.)

In each report, plaintiff was advised not to work or drive when taking the Flexeril or Skelaxin if it made her woozy. (Tr. 140-44.) In the February 29, 2008 report, Dr. Hecht described plaintiff's limitations in more detail, noting that she remained disabled from her job as a cook because it requires heavy lifting. (Tr. 144.)

Although Dr. Hecht's February 29, 2008 report indicates follow-up in six weeks, the record does not include any reports until July 11, 2008. (Tr. 144, 146.) Plaintiff's condition remained unchanged. (Tr. 146.) Dr. Hecht continued to prescribe Arthrotec and physical therapy, but dropped Skelaxin. (Id.) Follow-up was scheduled for four to six weeks, but the record contains no further physical examination reports from Dr. Hecht.

4

The record contains three form letters from Island Musculoskeletal Care, one dated August 8, 2008 and signed by Dr. Khatchatrian (Tr. 145), one dated December 5, 2008 and signed by Dr. Hecht (Tr. 153), and one dated December 15, 2008 and signed by Dr. Drazic, each with a checkmark indicating that plaintiff was "totally disabled at this time." (Tr. 151). An MRI ordered by Musculoskeletal Care and performed on December 5, 2008, showed degenerative disc disease at L-5, bulge with encroachment of foramina at L4-L5 and L3-L4, stenosis with facet arthropathy at L3-L4, and right-lateral disk ridge complex. (Tr. 152.)

The Disability Report – Form SSA-3368 that plaintiff filed indicates that she was regularly seen at Queens Long Island Medical Group from June 1997 through June 2007, and that an MRI was performed in June 2006 and an X-ray was taken in June 2007. (Tr. 74.) Records of those visits and tests, however, are not included in the record before the Court. The only medical evidence from this source is a note titled "Notification of Absence due to Illness," dated December 2, 2008, and signed by Dr. Thimpanah, stating: "Due to low back pain, [Rosa Holder] is advised to avoid bending lifting standing for the foreseeable future." (Tr. 150.)

B. Medical Records - Consultative Examiner

On September 5, 2007, plaintiff was examined by Dr. Luke Han. (Tr. 122.) She reported that she could not sit, stand or walk or "do anything." (Id.) Plaintiff rated her pain as a 9 on a scale of 0 to 10 and described it as originating in her lower back, radiating to her right leg, foot and arm. (Id.) Dr. Han noted that plaintiff became emotional and said that she had panic attacks because of the pain. (Id.) She reported that she does not drive, clean, or do laundry, and she cannot bathe herself. (Tr. 123.) Plaintiff showers and dresses herself twice a week and cooks once a week. (Id.) Most of the time she watches TV, listens to the radio and reads. (Id.)

Dr. Han noted that plaintiff did not appear to be in acute distress and needed no help changing for the exam, getting on and off the exam table, or rising from a chair. (Id.) She declined to heel-toe walk or squat. Dr. Han also noted that "when [plaintiff] stands her upper body is slightly leaning forward." (Id.)

Upon physical examination, plaintiff demonstrated a limited range of motion in her lumbar spine, with forward flexion 10 degrees, extension 0 degrees, lateral flexion 0 degrees and rotary movement 10 degrees bilaterally, and stated that she experienced low back pain during the test. She also complained of bilateral pain at 60 degrees upon straight leg raise testing. Plaintiff exhibited tenderness on the right side of the paraspinal muscle at the lumbar area, as well as in the lower lumbar spine and sacral spine. She also indicated that she had little feeling in her left leg, could not feel a pinprick in her left foot, and had no feeling in her right leg and right foot. (Tr. 125.)

Dr. Han noted that an X-ray showed degenerative changes to her lumbosacral spine. (Id.) The X-ray, performed on September 4, 2007, shows "mild degenerative spondylosis at the L1-L2 and L4-L5 levels with minimal changes in the L3-L4 disc space," "slight spondylolisthesis of L4 over L5," "moderate straightening," and a "transitional L5 vertebral body." (Tr. 127.) He diagnosed her with low back pain and concluded that "[s]he has a mild restriction for heavy lifting and carrying." (Tr. 125.)

C. Hearing Testimony

At the hearing on May 7, 2008, plaintiff testified that she could barely carry things and barely walk. (Tr. 22.) She could walk two blocks before needing to rest, stand for 20-30

minutes, and sit for a half hour before her back started to hurt. (Id.) Plaintiff further estimated that she could lift and carry up to five pounds. (Id.) She claimed to be in a lot of pain. (Id.)

Plaintiff also testified that she takes public transportation to doctors appointments and took the bus to the hearing. (Tr. 23.) She described her typical day as involving mostly laying around the house. (Id.) Plaintiff said that she sometimes cooks and sometimes she eats out. Her daughter does the cleaning, grocery shopping and laundry. (Tr. 24.) In addition, at the close of the hearing, the ALJ asked whether there was anything else plaintiff wished to add, and she responded: "I hurt my back and I can't do the things that I used to do. And it's taken a toll on me mentally and physically." (Tr. 25.)

### D. Emergency Room Visit

On November 30, 2008, plaintiff went to the emergency room at Forest Hills Hospital complaining of pain, right leg weakness and difficulty urinating. (Tr. 156.) The impression noted in her discharge record indicates "radicular pain." (Id.) She was prescribed 600 mg of Motrin three times a day and advised to follow up with a pain management doctor. (Id.)

## II. Standard of Review

Under 42 U.S.C. § 405(g), this Court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v.Chater, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A claimant is "disabled" within the meaning of the Social Security Act only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has established a sequential five-step process for making this determination. See 20 C.F.R. § 404.1520. The Commissioner must first analyze whether the claimant is engaged in substantial gainful activity. If not, the Commissioner then evaluates whether the claimant has a medically determinable impairment or combination of impairments that is "severe." Upon finding a "severe" impairment at step two, the Commissioner determines whether the impairment is "listed" in the regulations requiring a determination of disability at step three. At step four, the Commissioner analyses whether the claimant remains capable of performing her past work based on her residual functional capacity (RFC). If not, the Commissioner determines whether the claimant is capable of performing other work that exists in the national economy. Id.

III. Residual Functional Capacity and Disability Determination

At step four of the five-step analysis, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with her statements assessing her own residual functional capacity that she gave in response to the ALJ's questioning at the hearing. (Tr. 10.) Further, the ALJ found that her alleged limitations were "disproportionate to the treating source records,"

8

(Tr. 12), citing the fact that "her bilateral straight leg [raise] test went from positive to negative when physical therapy was started" and the fact that physical examinations of her lower extremities were consistently negative and confirmed by an unremarkable EMG. (Id.) In addition, the ALJ emphasized that plaintiff's 2008 MRI did not indicate herniated discs even though the 2003 MRI, referred to by Dr. Hecht, but not part of the record, "allegedly" did. (Id.) He also pointed out that Dr. Hecht rendered a diagnostic impression of lumbosacral sprain-strain and lumbar disc herniations only in his initial examination report and not in any follow-up reports. (Id.)

The ALJ gave "controlling weight" to the "objective diagnostic findings of the treating source, Dr. Hecht, as contained in the EMG of July 13, 2007 and MRI of December 5, 2008." (Id.) The ALJ declined to give controlling weight, however, to Dr. Hecht's "conclusory statements based on plaintiff's subjective complaints." (Tr. 12.) Noting that the range of motion values were missing from the records of plaintiff's follow-up visits, the ALJ dismissed their absence as insignificant because they were "primarily based on [plaintiff's] subjective claim of pain or discomfort." (Tr. Id.) In addition, the ALJ criticized Dr. Hecht and "the other treating and examining physicians at Island Musculoskeletal Care group" for "render[ing] conclusory opinions that [plaintiff] was 'totally disabled'" even though they never performed a physical residual functional capacity assessment and "never rendered an opinion as to [plaintiff's] ability to sit, stand, walk, push/pull, lift/carry or perform postural functions." (Tr. 12-13.)

Instead, the ALJ accorded "great weight" to the findings and opinion of the consultative examiner, Dr. Han, which he concluded were supported by substantial evidence in the record. (Tr. 13.) Specifically, the ALJ relied upon the negative EMG and the 2008 MRI that did not show a herniated disc. (Id.) He also noted that despite plaintiff's claim that she had no feeling of

9

pin prick in her left leg and no feeling in her right leg and foot, those complaints were not included in Dr. Hecht's reports. (Id.) Thus, in accordance with Dr. Han's opinion that plaintiff's only restriction was for heavy lifting and carrying, the ALJ concluded plaintiff could perform light work,[1] including her past relevant work as a cashier. (Id.) The ALJ went on to step five, though not required, to conclude that under the Medical Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, and that plaintiff is not disabled. (Tr. 14.)

IV. Review of the Determination

Because petitioner was unrepresented during the administrative process, the ALJ had a heightened obligation to develop the record. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."); Echevarria v. Secy. of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (When a claimant proceeds unrepresented, the ALJ is under a heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."); cf. Rosa v. Callahan, 168 F3d 72, 79 n.5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"). Though the ALJ recognized throughout his analysis that certain information was absent from the record, he nevertheless reached a conclusion as to petitioner's disability.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and walking, standing, or sitting six hours out of an eight hour day. 20 C.F.R. §§ 404.1567(b), 416.967(b).

10

With respect to the missing range of motion and manual muscle testing reports, the ALJ dismissed them as unnecessary on the ground that they were based on plaintiff's subjective complaints. (Tr. 12.) The ALJ also dismissed the treating physicians' opinions that plaintiff was unable to work as conclusory because they were not based on complete RFC assessments or opinions as to plaintiff's ability to sit, stand, walk, lift or carry. (Tr. 12-13.) He afforded "great weight," however, to the opinion of Dr. Han that plaintiff had only "a mild restriction for heavy lifting and carrying" notwithstanding its vagueness and the absence of an underlying RFC. (Tr. 13.) In addition, even though the ALJ questioned the accuracy of Dr. Hecht's report that the 2003 MRI revealed a disc herniation as compared to the 2008 MRI that revealed only a bulge, he gave the 2008 MRI "controlling weight" without the benefit of the actual 2003 MRI report. (Tr. 12.) Finally, citing the lack of evidence in the record of psychological treatment, the ALJ determined at step two that plaintiff's mental impairment was not "severe" despite the fact that she reported panic attacks to Dr. Han and testified at the hearing that her injury had "taken a toll on [her] mentally." (Tr. 9, 25). The ALJ, however, never inquired whether plaintiff had sought any treatment. (Tr. 25.)

Because the ALJ rejected petitioner's claim without meeting his obligation to develop the record, the case must be remanded.

## Conclusion

For the reasons stated above, both parties' motions for judgment on the pleadings are denied. The case is remanded to the Commissioner for further proceedings consistent with this opinion, including, but not limited to: (1) contacting plaintiff's treating physicians for a complete assessment of her residual functional capacity, (2) requesting complete treatment records from

the Queens Long Island Medical Group, the 2003 MRI report and Dr. Hecht's range of motion and manual muscle testing reports, and (3) evaluating further the existence, if any, of a mental impairment. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
August 19, 2010

                                                       s/ Judge Raymond J. Dearie

                                                      RAYMOND J. DEARIE
                                                      United States District Judge